No. 47,930

In re Application of CHARLES R. McCULLOUGH, *Appellee*, v. JOHNNIE DARR, Sheriff of Sedgwick County, Kansas, *Appellant*.

(548 P. 2d 1245)

Opinion filed April 10, 1976.

*Stephen M. Joseph*, assistant district attorney, argued the cause, and *Keith Sanborn*, district attorney, was with him on the brief for the appellant.

*Russell Shultz,* of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the Sedgwick County Sheriff from an order of the Sedgwick County District Court granting Charles R. McCullough's petition for a writ of habeas corpus. The petition stems from extradition proceedings initiated by the Governor of Colorado who made demand upon the Governor of Kansas for the extradition of McCullough.

Charles Raymond McCullough (petitioner-appellee) was married to Lillie P. McCullough. On March 29, 1973, a decree in dissolution of marriage giving Lillie custody of the McCullough's three minor children was entered in Colorado. On December 10, 1973, Charles McCullough, with the permission of his ex-wife Lillie, picked up the three minor children in Colorado Springs, Colorado, and took them to his Wichita, Kansas, home for a Christmas visit. On January 5, 1974, Lillie McCullough telephoned Charles who allegedly refused to return the children and has since enrolled the children in school in Wichita.

On January 15, 1974, an information was filed in the El Paso District Court in Colorado charging the appellee with violation of custody orders "on or about the 5th day of January, 1974." (Colo. Rev. State. 40-3-304 [2] [1963, 1971 Perm. Supp.], now 18-3-304 [2] [1973].) The information was supported by Lillie McCullough's affidavit. Thereafter, a warrant for arrest was issued. It is conceded the appellee was not in Colorado on January 5, 1974.

On April 11, 1974, an "APPLICATION FOR REQUISITION OF CHARLES RAYMOND McCULLOUGH, JR." (emphasis added) addressed to the Governor of Colorado was filed. On May 28, 1974, the Governor of Colorado made written demand the Governor of Kansas to arrest and deliver the appellee. On July 30, 1974, Governor Robert Docking issued a warrant for the appellee's arrest. The appellant executed this warrant.

On August 5, 1974, a petition for a writ of habeas corpus in extradition was filed in the Sedgwick County District Court in the case *McCullough v. Darr,* Case No. C-31220. The appellant answered. On August 22, 1974, after a hearing, the appellee was discharged because: (a) the papers on which the Kansas Governor's warrant was issued were insufficient in law to support the extradition of Charles R. McCullough, and (b) the petitioner was not,

in fact, present in Colorado on January 5, 1974, when the crime alleged was alleged to have been committed. No appeal was taken from this discharge.

The Colorado authorities amended and refiled their proceedings. On December 11, 1974, an amended information was filed in the El Paso District Court. This information deleted "JR." in the appellee's name (apparently because the appellee has a son named Charles Raymond McCullough, Jr.), but otherwise the information was identical to the first information for it alleged "[t]hat on or about the 5th day of January, 1974" the appellee unlawfully and feloniously violated a custody order with the intent to deprive the lawful custodian of custody. The affidavit of Lillie McCullough in support of the amended information contained the same allegations of fact; that the appellee took the children with her permission on December 10, 1973, but refused to return them on January 5, 1974. However, the "APPLICATION FOR REQUISITION OF CHARLES RAYMOND McCULLOUGH" addressed to the Governor of Colorado and filed December 11, 1974 was changed. It alleged in part:

"That on or about the 10th day of December, *1974,* the said CHARLES RAYMOND McCULLOUGH took said children from the County of El Paso, State of Colorado, and ever since that time has refused to return them to Lillie Pearl McCullough, their lawful custodian, in violation of Colorado Revised Statutes 40-3-304 (2)." (Emphasis added.)

It is conceded the year 1974 is erroneous and should be 1973.

On December 17, 1974, the Governor of Colorado made a second written demand upon the Governor of Kansas to arrest and deliver the appellee. On January 9, 1975, Governor Robert Docking issued a second warrant for the appellee's arrest using the same language as in the first arrest warrant. This second warrant was also executed by the appellant.

On January 15, 1975, the appellee filed a petition for writ of habeas corpus in the Sedgwick County District Court in *McCullough v. Darr,* Case No. C-32501. The appellant answered and alleged the appellee was in lawful custody by virtue of the extradition warrant.

The district court hearing the matter noted the application for requisition alleged the appellee took the children on December 10, *1974,* not December 10, *1973.* The appellant admitted the date was incorrect but argued this was only a typographical error. The appellee argued his ex-wife voluntarily surrendered custody of the children on December 10, 1973, hence the Colorado courts had no

jurisdiction. On January 30, 1975, the district court discharged the appellee. The reason for the discharge is found in the court's oral ruling where it held:

"THE COURT: Well, I am concerned by several matters contained in these extradition papers.

"Firstly, the affidavit of Mrs. McCullough states that she voluntarily relinquished custody of these children to Mr. McCullough, and he left the state with her blessing.

"There is nothing contained in any of the extradition papers that indicate that she did or did not have the authority of a court in allowing Mr. McCullough to have custody of the children.

"He did not remove the children from the State of Colorado without the permission of Mrs. McCullough, as stated in her own affidavit.

"In addition, these papers are important enough that they ought to have the dates correct, and the Application for Requisition of Charles Raymond McCullough itself states that on December 10, 1974, he did take the children. That is an error and incorrect.

"I would concur that I can't go beyond the extradition papers, but the papers themselves on their face show that the defendant did not on December 10, 1974, take the children from El Paso County, Colorado. And the Court is not going to allow an amendment of these papers at this stage.

"And in addition, the extradition papers show on their face that there was no violation of the laws of the State of Colorado.

"The writ is allowed. Defendant is released from custody."

Appeal from the foregoing decision has been duly perfected to this court.

Extradition proceedings are controlled by the Uniform Criminal Extradition Act, K. S. A. 22-2701, *et seq.* Before the Governor may issue a warrant, he must apply the standards set out in K. S. A. 22-2703 to the documents supporting the demand for extradition. Under that statute "[t]he indictment, information affidavit or affidavit made before the magistrate must *substantially charge* the person demanded with having committed a crime under the law of that state." (Emphasis added.) (See, *Smith v. Nye,* 176 Kan. 679, 680, 272 P. 2d 1079.) This is in accord with *Pierce v. Creecy,* 210 U. S. 387, 52 L. Ed. 1113, 28 S. Ct. 714, where the constitutional standard of scrutiny was stated as follows:

". . . [T]he Constitution does not require, as an indispensable prerequisite to interstate extradition, that there should be a good indictment, or even an indictment of any kind. It requires nothing more than a charge of crime. . . ." (p. 403.)

Here the Governor found the information substantially charged the appellee with having committed a crime. Where an accused challenges extradition in a habeas corpus proceeding brought under

the Uniform Criminal Extradition Act, the Governor's warrant issued in the extradition proceedings is presumed valid and regular in all respects, thus casting the burden of proof upon the petitioner to overcome the *prima facie* case made by the Governor's warrant. (*Woody v. State,* 215 Kan. 353, 524 P. 2d 1150, cert. denied, 419 U. S. 1003, 42 L. Ed. 2d 278, 95 S. Ct. 322; and *Dean v. Sheriff of Leavenworth County,* 217 Kan. 669, 538 P. 2d 725.) Here the Governor's warrant is identical in form to that approved in *Woody v. State,* supra, thus creating a *prima facie* case for the state.

Has the appellee defeated the *prima facie* case established by the Governor's warrant? We think not. Initially the trial court found the incorrect date in the application for requisition defeated extradition. This is erroneous. So long as the charge made against one whose extradition is sought legally constitutes a crime, technical defects in the extradition papers cannot prevent extradition. (See, 31 Am. Jur. 2d, Extradition, § 35, p. 948; Annot., 40 A. L. R. 2d 1151 [1955]; and *Person v. Morrow,* 108 F. 2d 838 [10th Cir. 1940].) Thus errors in the date of the application for requisition do not defeat extradition. (*Ex parte Bradley,* 456 S. W. 2d 370 [Tex. Crim. App. 1970]; and *Smedley v. Holt,* 541 P. 2d 17 [Alas. 1975].) (See generally, 35 C. J. S. Extradition, § 14 [9], p. 424; *State v. Clough,* 72 N. H. 178, 55 Atl. 554 [1903], aff'd *Munsey v. Clough,* 196 U. S. 364, 49 L. Ed. 515, 25 S. Ct. 282 [1905]; and *Ex parte Bowman,* 480 S. W. 2d 675 [Tex. Crim. App. 1972].) The appellee recognizes this rule and did not consider this point worthy of briefing.

The appellee argues the documents supporting the Governor's warrant did not substantially charge him with a crime. He contends because he was not in Colorado on January 5, 1974, he could not commit an extraditable offense. This argument is controlled by the clear statutory language of K. S. A. 22-2706 which provides:

"The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 22-2703 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, *even though the accused was not in that state at the time of the commission of the crime,* and has not fled therefrom." (Emphasis added.)

Other jurisdictions which have adopted the Uniform Criminal Extradition Act have construed and applied their counterpart to

K. S. A. 22-2706. Generally they emphasize the necessity of reaching an accused in an asylum state when he has committed a crime in the demanding state by his acts in the asylum state. In *Sheriff v. Thompson*, 85 Nev. 211, 452 P. 2d 911 (1969), the accused was entrusted with $6,000 worth of rare coins in California. The accused had the owner's initial permission to take the coins out of the state. The owner subsequently filed grand theft charges against the accused, and extradition was allowed by the Nevada Supreme Court even though the permission of the complaining witness was initially granted and the accused left the state. Similarly in *Ex parte Hagar*, 434 S. W. 2d 675 (Tex. Crim. App. 1968), the accused testified that *at his wife's request* he took her and four of their six children from Alabama to Oklahoma. He then went to Texas where he was later extradited to Oklahoma on charges of child abandonment. (And see, *Ex parte Morgan*, 78 F. Supp. 756 [S. D. Cal. 1948], aff'd sub nom. *Morgan v. Horrall*, 175 F. 2d 404 [9th Cir. 1949], cert. denied, 338 U. S. 827, 94 L. Ed. 503, 70 S. Ct. 76.)

The interest of the demanding state in such cases was noted in the case of *In re Cooper*, 53 Cal. 2d 772, 3 Cal. Rptr. 140, 349 P. 2d 956, (1960), appeal dismissed and cert. denied, 364 U. S. 294, 5 L. Ed. 2d 83, 81 S. Ct. 104. The accuseds in *Cooper* mailed obscene literature from California to Pennsylvania. They were charged with a crime in Pennsylvania and extradition was sought. They resisted and applied for habeas relief. That relief was denied and Justice Traynor writing for the California Supreme Court stated this policy behind the California statutory counterpart to K. S. A. 22-2706:

". . . A criminal who acts in one state to commit crimes in another may pose a far more serious problem to the latter state than one who commits a crime there and then flees from justice. When the criminal who commits his crime entirely in one state flees, he ordinarily poses no threat of additional crimes therein; if extradition fails, there is only frustration of that state's interest in punishing him. In contrast, the criminal who operates from without the state's borders poses a continuing threat. Since his conduct may be undetected or apparently harmless in the state where he acts, the only effective impetus for prosecution may come from the state that suffers the harm. Far more divisive than a state's refusal to extradite a fugitive for a past offense would be its unwitting provision not only of a base of operation but of an asylum for those who commit crimes without being personally present at the place where their crimes are consummated. The Legislature validly enacted § 1549.1 [the counterpart of K. S. A. 22-2706] to prevent that result." (p. 776.)

The appellee argues he and his children left Colorado with Lillie McCullough's permission. Therefore, he contends no crime

can be charged. The appellee was charged with violating Colo. Rev. Stat. 40-3-304 (2) (1963, 1971 Perm. Supp.). It provides:

"Any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eighteen years, commits a class 5 felony."

In reviewing the appellee's arguments for extradition purposes, we are not concerned with his guilt or innocence. K. S. A. 22-2720 provides:

"The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

Here there was no question of identity after the "JR." was deleted from the appellee's name. Thus his guilt or innocence is to be determined in Colorado, not by the Kansas courts. (*In re Justice*, 175 Kan. 25, 31, 259 P. 2d 152.)

The appellee next contends there was never any criminal intent on his part either in Kansas or Colorado. Because this court does not determine the guilt or innocence of the accused, we are not required under K. S. A. 22-2706 to find the accused intentionally committed the crime. Rather the question of intent is to be determined from the sufficiency of the demand for extradition. (*Conrad v. McClearn*, 166 Colo. 568, 445 P. 2d 222 [1968].) Since the affidavit for requisition and the amended information charge the accused with the *intent* to deprive the lawful custodian of the children, sufficient intent to commit the crime is alleged.

Last the appellee argues the findings of the court in Case No. C-31220, the first habeas corpus case, are *res judicata* regarding the extradition proceedings and require affirmance of the order of the trial court discharging the accused. The general rule in this regard is stated in Annot., 33 A. L. R. 3d 1443 (1970) as follows:

". . . [A] discharge because of insufficient process or lack of evidence does not bar a subsequent extradition proceeding and is not res judicata in a subsequent habeas corpus proceeding where the process is corrected or additional evidence is presented." (p. 1444.)

(See also, 39 C. J. S. Habeas Corpus, § 104 [*b*] [1], pp. 695-697.)

Thus where the papers falsely alleged fugitive status, (*Boyd v. Van Cleave*, 180 Colo. 403, 505 P. 2d 1305 [1973]) where the requisition charged the accused with a crime when in fact he was con-

victed and broke bail, (*People ex rel. Ritholz v. Sain*, 26 Ill. 2d 455, 187 N. E. 2d 241 [1962], cert. denied, 374 U. S. 807, 10 L. Ed. 2d 1031, 83 S. Ct. 1696) and where the extradition papers did not contain the required authentication (*State ex rel. Yarbrough v. Snider*, 2 Or. App. 97, 465 P. 2d 739 [1970]) a second extradition demand was not *res judicata*.

We think the foregoing authorities are analogous to the case at bar. In the first case the information filed in Colorado placed a "Jr." after the appellee's name, and the application for requisition was thought to charge the named person with taking the children from Colorado on January 5, 1974, contrary to the admitted facts. As we construe the trial court's findings in Case No. C-31220 the appellee was discharged by reason of technical defects in the process.

When the Colorado authorities refiled their information, the "Jr." was deleted and there was no question of identity. Furthermore, the application for requisition was enlarged to clarify the fact the appellee took the children on December 10, 1973, but did not violate the custody order until he refused to return them on or about January 5, 1974. Since the Colorado authorities were merely correcting their process, it cannot be said the subsequent extradition proceeding is *res judicata*.

The Governor's warrant and the supporting papers from Colorado are regular in all respects and allege that the appellee committed an act in Kansas which resulted in a crime in Colorado. On this state of the record the Uniform Criminal Extradition Act authorizes extradition by the State of Colorado.

The judgment of the lower court allowing the writ of habeas corpus and discharging the petitioner is reversed with directions to discharge the writ.